# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Chris Anthony Williams, <br><br> Petitioner, <br><br> v. <br><br> Stuart Sherman et al., <br><br> Respondents. | Case No.: 17cv1064 AJB (PCL) <br><br> **REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

A San Diego jury convicted Petitioner Chris Williams of selling methamphetamine, for which he was sentenced to five years in prison. On May 22, 2017, Petitioner filed the instant petition, arguing that his constitutional rights were violated by the trial court's denial of his request to admit a conversation between him and his co-defendant which was recorded in the back of a police car after they were arrested. (Doc. 1.) For the reasons discussed below, the Court **RECOMMENDS** the Petition be **DENIED**.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences

properly drawn from these facts, are entitled to statutory presumption of correctness).

The state appellate court recounted the facts as follows:

An undercover police officer approached Williams near 5th and C Street in San Diego and asked where he could buy $20 worth of methamphetamine. Williams turned, gestured toward Burnettex, who was standing five to seven feet away, and said she had the narcotics.

As the officer approached Burnettex, Williams told her the officer wanted $20 worth of methamphetamine. After checking her bra, she told Williams she did not have it and thought she had left it on the bed. Williams asked her if she was sure. She checked her bra again and told Williams she could not find it. The officer told Williams he was going to keep looking and started to walk away.

Williams stopped the officer and told him to wait. Williams then looked toward Burnettex and told her she needed to make sure she did not have it. She turned away from the officer and checked again. She ultimately retrieved a small, clear, plastic baggie containing .31 grams of methamphetamine and gave it to the officer. The officer then gave her two $10 bills with recorded serial numbers.

A uniformed police officer subsequently stopped and searched Williams. The officer found a cell phone and a hotel room key in one of Williams's front pockets. The officer searched the hotel room, which was registered to Williams, and found a black backpack on the bed. The backpack contained 10 small plastic baggies of the type commonly used for packaging narcotics, several pieces of paper, and a couple of prescription bottles with Williams's name on them. The officer did not find any narcotics or money either on Williams or in Williams's hotel room.

Another uniformed officer stopped Burnettex and searched her. The officer found the two $10 bills with prerecorded serial numbers used by the undercover officer.

At a subsequent curbside lineup, the undercover officer positively identified Williams and Burnettex as the people who sold him methamphetamine. The officer was not wearing a body camera and, although he was wearing a transmitter, his encounter with Williams and Burnettex was not recorded.

The undercover officer looked through Williams's cell phone and found three text messages sent and received earlier in the day. The first text message read, "Hey, where you at? Somebody wants a 40. I'm at 5th and C Street in front of the [drugstore]. Hurry." The second text message read, "Nisha, where are you at, baby girl?" The third text message read, "Babe, the police is hot out, Nisha."

(Lodgment 5, at 2-4.)

The jury found Petitioner and Burnettex guilty of selling a controlled substance. The trial court found true allegations that Petitioner had a prior narcotics sales related conviction, five prior strike convictions, and three prior prison commitment convictions. After striking the prior narcotics sales related conviction finding and two of the prior prison conviction findings, the court sentenced Petitioner to five years in prison. (Lodgment 8.)

Petitioner appealed, claiming the trial court erred and violated his due process rights by denying his request to admit evidence at trial of his recorded conversation with co-defendant Burnettex that was conducted in the back of a police car after they were arrested. (Lodgment 3.) The California Court of Appeal set forth the portion of the conversation between Williams and Burnettex relevant to Petitioner's claim:

> OFFICER: Okay, you guys are both under arrest for a narcotics transaction that took place over here, okay?
> 
> [BURNETTEX]: Wait, what narcotics?
> 
> OFFICER: You guys sold drugs.
> 
> [BURNETTEX]: All I sold – all I had was spice.
> 
> OFFICER: Okay, watch out.
> 
> [BURNETTEX]: Babe, tell 'em.
> 
> WILLIAMS: I don't know. I don't know what they talking about.
> 
> [BURNETTEX]:I don't know what they're talking about either.
> 
> WILLIAMS: I guess they talking about that black dude that you was talking to.
> 
> [BURNETTEX]: Did they get him?
> 
> WILLIAMS: I don't know. Did you do a transaction with him?
> 
> [BURNETTEX]: I gave it to him but I don't – (unintelligible).
> 
> WILLIAMS: I don't know – wasn't even paying attention. I was talking to your little niece.

| | |
|---|---|
| 1 | [BURNETTEX]: They snitched, baby. |
| 2 | WILLIAMS: Who snitched? |
| 3 | [BURNETTEX]: Them. They're talking to them. I'm a be like, 'I didn't sell |
| 4 | anything.' All I had was that and that's money for my daughter. |
| 5 | WILLIAMS: Um, hmm. |
| 6 | [BURNETTEX]: I can't do this, baby. Officer, what drug transaction, please, can |
| 7 | you tell me about – 'cause the only thing I had was my baby's diaper money. |
| 8 | (Unintelligible), would she even talk to us? |
| 9 | WILLIAMS: (Unintelligible) |
| 10 | [BURNETTEX]: I – knew we shouldn't – If we get out of this, baby, we going |
| 11 | home. |
| 12 | WILLIAMS: If – |
| 13 | [BURNETTEX]: All we gotta do is say – All you gotta do is say that we didn't do |
| 14 | anything, babe. |
| 15 | WILLIAMS: I ain't did nothing. I don't know. Like I said, did you know the boy |
| 16 | that you was talking to? |
| 17 | [BURNETTEX]: (Inaudible) |
| 18 | WILLIAMS: You didn't? |
| 19 | [BURNETTEX]: Just don't say anything, babe. Just tell 'em we didn't do |
| 20 | anything. |
| 21 | WILLIAMS: I ain't got nothing. I ain't got nothing to say. There ain't nothin' I can |
| 22 | say. (Unintelligible) narcotic transaction. |
| 23 | [BURNETTEX]: The only narcotic she (unintelligible) was the spice, and that's |
| 24 | not even a narcotic. I don't do – I'm a tell her I can't do drugs. I have a [child |
| 25 | protective services] case. This will affect my [child protective services] case. They |
| 26 | didn't even find nothing – All she found was twenty dollars on me and then some |
| 27 | fuckin' spice. |
| 28 | WILLIAMS: Who's that your little niece was talking about? |

[BURNETTEX]: Some Mexican dude.

WILLIAMS: She said some Mexican dude hit her?

[BURNETTEX]: Um, hmm.

WILLIAMS: You didn't do no transaction with nobody, did you?

[BURNETTEX]: Not, not, not – (unintelligible) baby, no. That twenty dollars, we had.

WILLIAMS: I wonder who that was that smacked your little cousin.

[BURNETTEX]: I don't know.

WILLIAMS: Your little niece or whatever.

[BURNETTEX]: I don't know, babe. But I'm not trippin' on that. Right now I'm trying to get us out of this.

WILLIAMS: Yeah, I wanna know what they're talking about too. Who they back there talkin' to?

[BURNETTEX]: Each other. Officer!

(Lodgment 6, at 4-7.)

The California Court of Appeal denied the claim, concluding that the trial court's determination that Burnettex's recorded statements, even if against her penal interest, were unreliable and therefore inadmissible was a determination well within the trial court's discretion. (Lodgment 6, at 9-10.) The Court of Appeal also concluded that even if the statements were admissible as declarations against penal interest or as nonhearsay, the trial court was within its discretion in excluding the statements under California Evidence Code section 352, because the unreliability of the statements made the probative value of the statements minimal, and the admission of the statements would be unduly prejudicial given the demonstrably false nature of some of Burnettex's statements and the exculpatory, self-serving, and inadmissible hearsay statements by Williams. (Lodgment 6, at 10-11.) The Court of Appeal further rejected Williams's claim that the exclusion of the recorded conversation violated his federal constitutional right to due process and a fair trial because "a state court's application of ordinary rules of evidence"

does not infringe upon a criminal defendant's right to present a defense, especially where Williams was allowed to address Burnettex's duress claim though cross-examination of the undercover officer. (Lodgment 8, at 11-12.)

Petitioner raised the same claim to the California Supreme Court, and on July 20, 2016, the California Supreme Court denied review. (Lodgment 10.)

## III. DISCUSSION

In his federal Petition, Petitioner raises the following claim: that the trial court erred and violated his federal due process rights by denying his request to admit at trial a recorded conversation between him and Ms. Burnettex that took place in a police car after they were arrested. Petitioner argues that the statements by Burnettex should have been admitted under the hearsay exception for declarations against penal interest and for the nonhearsay purpose of showing that Burnettex was not acting under the control of Petitioner during the drug transaction. (Doc. 1.)

### A. *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state

6

17cv1064 AJB (PCL)

does not infringe upon a criminal defendant's right to present a defense, especially where Williams was allowed to address Burnettex's duress claim though cross-examination of the undercover officer. (Lodgment 8, at 11-12.)

Petitioner raised the same claim to the California Supreme Court, and on July 20, 2016, the California Supreme Court denied review. (Lodgment 10.)

## III. DISCUSSION

In his federal Petition, Petitioner raises the following claim: that the trial court erred and violated his federal due process rights by denying his request to admit at trial a recorded conversation between him and Ms. Burnettex that took place in a police car after they were arrested. Petitioner argues that the statements by Burnettex should have been admitted under the hearsay exception for declarations against penal interest and for the nonhearsay purpose of showing that Burnettex was not acting under the control of Petitioner during the drug transaction. (Doc. 1.)

### A. *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state

court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (*overruled on other grounds by Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id*., the state court decision will not be "contrary to" clearly established federal law. *Id*. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. *Analysis*

Federal habeas relief does not usually lie to reverse a state court's evidentiary

ruling. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). The question before the Court is not whether the evidence was properly admitted under state evidentiary rules, which is purely a question of state law. *Id.*; *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) ("The correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review."). Rather, the question before the Court is whether the exclusion of the evidence was so prejudicial as to constitute a violation of federal due process. In *Holmes v. South Carolina*, 547 U.S. 319 (2006), the Supreme Court reaffirmed that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Id.* at 326-327 (citations and internal quotations and edit marks omitted).

      In *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), the Supreme Court held that a due process violation arose where the excluded evidence was reliable and critical to the defense. *Id.* at 302. In *Chambers*, the trial court excluded the testimony of three witnesses who had heard another man, McDonald, confess to the charged crime. *Id.* at 292. That evidence was corroborated by an eyewitness who saw McDonald shoot the victim, a witness who saw McDonald with a gun in his hand after the shooting, and a signed confession made by McDonald to Chambers's attorneys. *Id.* at 292-300. The Supreme Court found a due process violation because that evidence was both trustworthy and critical to his defense. *Id.* at 302.

      The Ninth Circuit has observed that *Chambers* "demonstrate[s] the unusually compelling circumstances required to outweigh the strong state interest in administration of its trials." *Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir. 1983). "[T]he holding of *Chambers* – if one can be discerned from such a fact-intensive case – is certainly not that a defendant is denied 'a fair opportunity to defend against the State's accusations' whenever 'critical evidence' favorable to him is excluded, but rather that erroneous

evidentiary rulings can, in combination, rise to the level of a due process violation." *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996); *accord Christian v. Frank*, 595 F.3d 1076 (9th Cir. 2010) (state court's exclusion of testimony of two witnesses who heard a third party confession was not an unreasonable application of *Chambers* because that evidence was unreliable).

Here, the state court reasonably concluded that the statements made during the recorded police-car conversation between Petitioner and Burnettex were unreliable in light of the circumstances under which the statements were made. The Court of Appeal pointed out that after listening to the recording the conversation felt "staged." Moreover, the Court of Appeal found Burnettex's statements were self-serving because she claimed she only gave the undercover officer spice, a claim that has been proven patently false as the substance she sold to the undercover officer was found to be .31 grams of methamphetamine. (Lodgment 6, at 9-10.) Furthermore, the conversation contained Williams's own inadmissible hearsay denials of guilt. This evidence stands in stark contrast to the well corroborated confessions sought to be introduced in *Chambers*, which the Supreme Court observed had "persuasive assurances of trustworthiness." *Chambers*, 410 U.S. at 302. Under these circumstances, the state court's determination that the exclusion of the recorded statements did not violate due process was a reasonable decision. Habeas corpus relief should be denied.

## IV. CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Battaglia under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

**IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than February 9, 2018 any party to this action may file written objections with the Court and serve a copy on all parties. The document

should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: January 17, 2018

Peter C. Lewis
United States Magistrate Judge